THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

N.C.C. MOTORSPORTS, INC.,      )
                                )
          Plaintiff,         )
                                )       Case No. 4:12CV01505AGF
vs.                          )
                                )
K-VA-T FOOD STORES, INC.,     )
                                )
         Defendant.       )

## MEMORANDUM AND ORDER

This is an action for copyright infringement brought pursuant to the Copyright

Act, 17 U.S.C. § 502 *et seq.* Now before the Court is Defendant K-VA-T Food Stores,

Inc.'s motion to dismiss Plaintiff N.C.C. Motorsports, Inc.'s complaint for lack of

personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and 28 U.S.C.

§ 1391(c). For the reasons set forth below, the motion will be granted.

## I. BACKGROUND

For purposes of this motion, the complaint and attachments thereto establish the

following:

Plaintiff, a Missouri corporation, owns a copyright on a design for a shopping cart

vehicle (the "Registered Design"). Robert H. Unnerstall, Sr. obtained a Certificate of

Registration VA 291-601 for the Registered Design on July 16, 1986, and assigned the

copyright in the Registered Design to Plaintiff on July 22, 2012.

On October 1, 1993, Plaintiff leased a shopping cart vehicle (the "Big Cart") based

upon the Registered Design to Defendant, a Virginia corporation headquartered in

Abingdon, Virginia, that operates a chain of grocery stores in Kentucky, Tennessee, and Virginia. Defendant used the Big Cart to advertise at promotional events such as auto races.

The parties' lease contained a choice of law provision, stating "[t]his lease shall be construed and interpreted under the laws of the State of Missouri." Doc. No. 1-4 at 2. In addition, Paragraph 16 of the lease stated: "[Defendant] specifically acknowledges that [Plaintiff] has a copyright covering 'Big Cart' and [Defendant] specifically agrees not to infringe on [Plaintiff's] copyright." *Id*. at 6. Paragraph 11 of the lease further provided that "[Defendant] shall not use or operate or permit the use or operation of 'Big Cart' in the [Plaintiff's] market area." *Id*. at 5. Under the lease Defendant made monthly payments to Plaintiff, and Plaintiff deposited the payments in a Missouri bank. Plaintiff contends that the lease was executed in Missouri, but Defendant asserts it signed and executed the lease in Virginia.

On November 16, 2010, Defendant hired a third party to design and build a Food City Shopping Cart (the "FCS Cart") in Abingdon, Virginia. The FCS Cart was completed on February 21, 2011, and on March 28, 2011, Defendant unilaterally terminated its lease on the Big Cart. Defendant used the FCS Cart as it had used the Big Cart for promotional purposes at auto races, as shown in photo galleries on its websites, http://www.foodcityracing.com and http://www.foodcity.com/community/racing. These sites are accessible to Missouri citizens through use of the Internet. In addition, the record indicates that the sites are informational and promotional but not interactive. It is undisputed that Defendant generally makes no sales through these sites and has not sold

to Missouri residents by way of these sites.  Nor is there any indication that the sites link

to either another of Defendant's sites or to a third party site for purposes of making sales.

Defendant does not operate or own stores in Missouri, nor has it displayed the Big Cart or

the FCS Cart in Missouri.

Following the termination of the lease, Plaintiff brought suit against Defendant in

this Court alleging infringement of Plaintiff's assigned copyright in the Big Cart.

Defendant challenges this Court's exercise of personal jurisdiction.

## II.  ARGUMENTS OF THE PARTIES

Plaintiff alleges a single count of copyright infringement with respect to its

Registered Design for the Big Cart.  Specifically, Plaintiff alleges that Defendant's FCS

Cart infringes the Big Cart copyright, that Defendant's access to the Big Cart under the

lease gave rise to the alleged infringement, and that Defendant's infringing conduct

harmed Plaintiff in Missouri.  Plaintiff further alleges that the lease is a contract made in

Missouri involving payments to a Missouri corporation deposited in a Missouri bank, and

that it explicitly required that Defendant not infringe Plaintiff's copyright.  Finally,

Plaintiff alleges that the choice of law provision in the lease mandating the application of

Missouri law permits this Court to exercise personal jurisdiction over Defendant.

In support of its motion to dismiss for lack of personal jurisdiction Defendant

asserts that the lease is irrelevant because Plaintiff's claim is for copyright infringement

rather than breach of the unilaterally terminated lease.  Defendant also notes that the lease

contained a choice of law provision mandating application of Missouri law, but did not

contain a forum selection clause requiring suit in Missouri.  Further, because the lease

prohibited Defendant from using the Big Cart in Missouri, Defendant asserts that its only

contacts with Missouri were its payments to Plaintiff under the lease.  Defendant also

asserts that because the allegedly infringing actions occurred outside Missouri, it lacks

sufficient minimum contacts to be haled into a Missouri court.  Additionally, Defendant

also argues that Plaintiff cannot support its contention that the harm flowing from the

alleged infringement occurred in Missouri or that Defendant specifically targeted its

actions toward Missouri.[1]

In response, Plaintiff asserts that the harm due to the copyright infringement is felt

by the copyright holder in its home state, and therefore, that Defendant's infringement of

its copyright on the Registered Design gave rise to harm in Missouri.  Plaintiff also

contends that the lease is relevant to the jurisdictional question because it is a Missouri

contract made with a Missouri corporation and the lease payments were deposited in a

Missouri bank.  Although the lease has expired, Plaintiff notes that the allegedly

infringing FCS Cart was built while the lease was in effect.   With respect to other

minimum contacts, Plaintiff asserts that Defendant's display of the FCS Cart at auto races

in places other than Missouri and Defendant's website displaying images of the FCS Cart

are promotional activities directed at a nationwide audience, including Missourians.

---

[1]     Defendant also raises numerous factual arguments, contending that Plaintiff cannot
show that it has an enforceable copyright, that Unnerstall, Sr.'s assignment of the Big
Cart copyright to Plaintiff was invalid, that Plaintiff did not own the copyright during the
lease period and that the builder of the FCS cart is the infringer.  The Court will not
address these arguments because they assert, in essence, that Plaintiff fails to state a claim
for relief and are not a basis for precluding the exercise of personal jurisdiction.  *See
Centurion Wireless Techs., Inc. v. Hop-On Commc'ns., Inc.*, 342 F. Supp. 2d 832, 836 n.
1 (D. Neb. 2004) (declining, on motion to dismiss for lack of personal jurisdiction and to
transfer venue, to address factual issues relating to existence of claim for relief).

## III. **APPLICABLE LAW**

To defeat a motion to dismiss for lack of personal jurisdiction, "the nonmoving party need[ ] only make a prima facie showing of jurisdiction." *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008). This requires "a plaintiff [to] state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Dairy Farmers of Am. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 474 (8th Cir. 2012) (internal quotation omitted). The plaintiff has the burden of proving facts supporting personal jurisdiction. *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co. KG*, 646 F.3d 589, 592 (8th Cir. 2011). But where, as here, the court "does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the [plaintiff], and resolve all factual conflicts in favor of that party." *Pangaea, Inc. v. Flying Burrito, LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (internal quotation omitted).

In this case federal subject matter jurisdiction is predicated upon a federal statute. In such a case a federal district court cannot exercise personal jurisdiction over a defendant unless the statute at issue explicitly grants such jurisdiction or a state court in the forum state would have jurisdiction over that defendant. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104-05 (1987); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201 (7th Cir.1997); Fed. R. Civ. P. 4(k)(1)(A). Ascertaining a state's power in a federal-question case seems incongruent but this is what Rule 4(k)(1)(A) requires unless a federal statute authorizes nationwide service which the Copyright Act does not. *See* Rule 4(k)(1)(D); *Janmark*, 132 F. 3d 1201-02.

Because it is undisputed that the Copyright Act does not confer personal jurisdiction over Defendant, the personal jurisdiction analysis here requires two inquiries: whether the exercise of jurisdiction is proper under Missouri's long-arm statute, and whether it comports with the Due Process Clause of the Fifth Amendment.[2] *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387-88 (8th Cir. 1991). The Eighth Circuit recommends that courts undertake separate analyses of each area, which the undersigned shall do. *Dairy Farmers*, 702 F.3d at 475 (citing *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 231-32 (Mo. 2010)).

A. The Missouri Long-arm Statute

The Missouri long-arm statute provides in relevant part:

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts: . . .
>
> (2) The making of any contract within this state;
> (3) The commission of a tortious act within this state . . . .

Mo. Rev. Stat. § 506.500.1(2)-(3).

The Missouri long-arm statute operates "'within the specific categories enumerated in the statutes to the full extent permitted by the Due Process Clause.'" *Dairy Farmers*, 702 F.3d at 475 (quoting *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W. 2d 325, 327 (Mo. 1984)). "Missouri courts have interpreted [the tort

---

[2]    Because this case arises under federal law, the Court examines due process under the Fifth Amendment rather than the Fourteenth Amendment. *See Dakota Indus.*, 946 F.2d at 1389 n. 2. Regardless of which Amendment applies, however, the substantive analysis is essentially the same. *See id.*

arm] of the long-arm statute to include extraterritorial acts of negligence producing actionable consequences in Missouri." *TLC Vision (USA) Corp. v. Freeman*, No. 4:12CV01855ERW, 2013 WL 230254, at *6 (E.D. Mo. Jan. 22, 2013) (internal quotation omitted). "[F]oreseeability is the standard . . . [for] evaluating whether jurisdiction is appropriate over a tortious act occurring in another state with actionable consequences in Missouri." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012). If a defendant reasonably could foresee that his or her negligent actions would have consequences in Missouri, the long-arm statute is satisfied. *Id.*

B. The Due Process Clause

The analysis under the Due Process Clause requires "minimum contacts" between the nonresident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (internal quotations omitted). Sufficient contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.* at 297. The defendant must have "purposefully availed itself of the privilege of conducting activities within the forum [s]tate," thus invoking the benefits and protections of the state's laws. *Id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Under Eighth Circuit law courts consider five elements to determine whether sufficient minimum contacts exist to satisfy due process:

> '(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the

contacts; (4) the interest of [the forum state] in providing a forum for its
residents; and (5) the convenience or inconvenience to the parties.'

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592-93 (8th Cir. 2011) (quoting

*Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010)). Although "'the first three factors

are primary factors, and the remaining two are secondary factors,' [courts] look at all of

the factors and the totality of the circumstances in deciding whether personal jurisdiction

exists." *Id.* at 593 (quoting *Arden*, 614 F.3d at 794).

The minimum contacts necessary to satisfy due process form the basis for the

exercise of either "general" or "specific" jurisdiction. *See Helicopteros Nacionales de

Columbia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984). General jurisdiction is found

when a defendant's contacts with the forum state are so "continuous and systematic" that

the defendant may be subject to suit there for causes of action unrelated to its in-state

activities. *See Pangaea,* 647 F.3d at 746 n.3. Specific jurisdiction may be found when a

nonresident defendant "'has purposefully directed [its] activities at [Missouri] residents'"

in a suit that "'arises out of or relates to' these activities." *Lakin v. Prudential Sec., Inc.*,

348 F.3d 704, 707 (8th Cir. 2003) (quoting *Burger King*, 471 U.S. at 472); *see also*

*Arden*, 614 F.3d at 795; *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008).

When the cause of action involves a tortious act, a plaintiff also "can obtain

specific jurisdiction [over a nonresident defendant] by employing the *Calder* 'effects

test'" first set forth in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984):

> a defendant's tortious acts can serve as a source of personal jurisdiction
> only where the plaintiff makes a prima facie showing that the defendant's
> acts (1) were intentional, (2) were uniquely or expressly aimed at the forum

state, and (3) caused harm, the brunt of which was suffered--and which the
defendant knew was likely to be suffered--[in the forum state].

*Arden*, 614 F.3d at 796 (internal quotation omitted).

The *Calder* test does not supplant the Eighth Circuit's five-part test for personal

jurisdiction, but "requires the consideration of additional factors when an intentional tort"

such as copyright infringement is alleged. *Dakota Indus., Inc.*, 946 F.2d at 1391, *see also*

*Arden*, 614 F.3d at 796-97.

### 1. Due Process and Internet Contacts

In considering whether contacts premised upon the existence of a website will

satisfy due process for purposes of the exercise of specific jurisdiction, the Eighth Circuit

Court of Appeals has noted with approval the analytical framework set forth in *Zippo*

*Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *See Lakin*,

348 F.3d at 710–11 (holding that "the *Zippo* model is an appropriate approach in cases of

specific jurisdiction—i.e., ones in which we need only find 'minimum contacts'"). In

*Zippo*, the court created a "sliding scale" to measure the likelihood of personal

jurisdiction, noting that:

> [a]t one end of the spectrum are situations where a defendant clearly does
> business over the Internet. If the defendant enters into contracts with
> residents of a foreign jurisdiction that involve the knowing and repeated
> transmission of computer files over the Internet, personal jurisdiction is
> proper. At the opposite end are situations where a defendant has simply
> posted information on an Internet Web site which is accessible to users in
> foreign jurisdictions. **A passive Web site that does little more than make**
> **information available to those who are interested in it is not grounds**
> **for the exercise [of] personal jurisdiction**. The middle ground is
> occupied by interactive Web sites where a user can exchange information
> with the host computer. In these cases, the exercise of jurisdiction is

determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo*, 952 F. Supp. at 1124 (internal citations omitted) (emphasis supplied).

The Eighth Circuit has not, however, embraced *Zippo* as the conclusive determinant of specific personal jurisdiction in cases based upon Internet contacts. *Lakin*, 348 F.3d at 71. The appellate court notes, instead, that the "'nature and quality' of contacts is only one factor to consider," and that it "consider[s] [in a personal jurisdiction analysis] a variety of factors," including the five-factor test. *Id.*[3]

For example, in *Arden* the Eighth Circuit concluded that accessibility in Missouri to a website allowing "mere posting" and offering no interaction between users and a host computer was insufficient to confer personal jurisdiction. 614 F.3d at 796. The Court, citing *Zippo*, further concluded that specific jurisdiction arising from internet contacts depends not only on the nature of the website but also on evidence that individuals in the forum state accessed the website in doing business with the defendant. *Id.* at 797 (citing *Zippo*, 952 F. Supp. at 1125-26). The appellate court declined to find personal jurisdiction based on the mere possibility that a Missouri resident had contact with the defendant through the website. *Arden*, 614 F.3d at 797; *see also Pangaea*, 647 F.3d at 747 (rejecting the contention that the mere maintenance of a website that could be viewed by residents of the forum state was sufficient to confer specific personal jurisdiction over an out-of-state defendant in a trademark infringement action).

---

[3] However, because "general" personal jurisdiction was asserted in the case before it, the court in *Lakin* found the *Zippo* model less helpful. *Lakin*, 348 F.3d at 711.

# IV. DISCUSSION

## A. Jurisdiction under Missouri's Long-Arm Statute

### 1. Contract Prong

Plaintiff asserts that under Missouri's long-arm statute, this Court may exercise personal jurisdiction over Defendant under either of two theories: the making of a contract within the state or the commission of a tortious act within the state. With respect to the contract prong of the long-arm statute, the Court notes that Plaintiff alleges only copyright infringement, a claim grounded in tort. Thus, Plaintiff's reliance on the lease to support a finding of personal jurisdiction is not proper here. *See Serv. Vending Co. v. Wal-Mart Stores, Inc.*, 93 S.W.3d 764,768-69 (Mo. Ct. App. 2002) (noting that a forum-selection clause in a contract does not control the site for litigation of a tort claim even if the dispute that produced the tort claim would not have arisen absent the existence of the contract).

Moreover, even if the lease were a possible basis for the exercise of personal jurisdiction in this case, the Court cannot agree that it satisfies the requirements of the long-arm statute, as a contract made in Missouri. *See* Mo. Rev. Stat. § 506.500.1(2). Plaintiff has not demonstrated that the lease was a Missouri contract because Plaintiff fails to meet its burden to establish that acceptance of the lease, "the last act necessary to [its] form[ation,] occur[ed]" in Missouri. *Primus Corp. v. Centreformat Ltd.*, No. 05-0595-CV-W-DW, 2006 WL 181953, at *3 (W.D. Mo. Jan. 23, 2006). *See Renaissance Pen Co. v. Krone, L.L.C.*, No. 4:04 CV 557 DDN, 2006 WL 6322521, at *2 (E.D. Mo. April 11, 2006) (holding that merely "[e]ntering into a contract with a Missouri

11

corporation or a contract governed by Missouri law is insufficient to satisfy the contract prong of the long-arm statute"); *see also Peabody Holding Co., Inc., v. Costain Group PLC*, 808 F. Supp. 1425, 1433 (E.D. Mo. 1992) (holding that "[a] contract which has been accepted in Missouri is deemed to have been made in Missouri for purposes of jurisdiction under the Missouri long-arm statute").

Here Plaintiff asserts that Defendant executed the lease in Missouri.  Defendant, relying on a copy of the lease attached to Plaintiff's complaint, contends that Defendant mailed a signed copy of the lease to Plaintiff from Defendant's executive office in Virginia.  *See* Doc. No. 1-4; Doc. No. 9 at 6.  Taking these principles into account and viewing the allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to meet its burden to show that Defendant signed the lease in Missouri.  *See Viasystems, Inc.,* 646 F.3d at 596*; Primus Corp.*, 2006 WL 181953 at *3. Because it appears that the last act necessary to form the lease occurred in Virginia, the lease is not a contract "made in Missouri" and does not provide a basis for application of Missouri's long-arm statute.  *Renaissance Pen Co.*, 2006 WL 6322521, at *2.  Finally, Plaintiff incorrectly asserts that the Missouri long arm statute is applicable here because the choice of law provision mandates the application of Missouri law.[4]

---

[4]    Even if the Court agreed that the lease could properly form a basis for its exercise of jurisdiction over the copyright infringement claim, the language of the choice of law provision here is far from "sufficiently definite" and "unequivocal" to permit the exercise of personal jurisdiction over Defendant in Missouri. *Medicine Shoppe Intern., Inc. v. J-Pral Corp.*, 662 S.W.2d 263, 274 (Mo. Ct. App.1983) (holding that a provision stating that the contract "shall be deemed for all purposes to have been made in the State of Missouri and shall be governed by and construed under and in accordance with the laws of the State of Missouri was not sufficiently definite nor so unequivocal" to constitute a

2.  Tort Prong

With regard to the tortious act prong of the Missouri long-arm statute, it is clear that "extraterritorial acts which produce actionable consequences in Missouri" may satisfy the requirements of the statute. *Insituform Tech., Inc. v. Reynolds, Inc.*, 398 F. Supp. 2d 1058, 1063 (E.D. Mo. 2005) (internal quotations omitted). Analogous precedents from this District hold that infringement of a Missouri company's trademark, rather than copyright, causes economic injury in Missouri sufficient to support the exercise of personal jurisdiction under Missouri's long-arm statute. *See, e.g.*, *Cepia, L.L.C. v. Alibaba Group Holding Ltd.*, No. 4:11-CV-273 SNLJ, 2011 WL 5374747, at *7 (E.D. Mo. Nov. 8, 2011) (holding that alleged infringement of a Missouri corporation's trademark is a tortious act aimed at a Missouri citizen for purposes of the Missouri long-arm statute); *FURminator, Inc. v. Wahba*, No. 4:10CV01941 AGF, 2011 WL 3847390, at *2 (E.D. Mo. Aug. 29, 2011) (reaching the same conclusion, on the grounds that the long-arm statute "covers extraterritorial tortious acts that yield consequences in Missouri"); *Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters-Manhattan, Inc.*, 96 F. Supp.2d 919, 921 (E.D. Mo. 2000) (holding that

---

consent to the exercise of personal jurisdiction)*; see also Service Vending Co. v. Wal-Mart Stores, Inc.*, 93 S.W.3d 764,768-69 (Mo. Ct. App. 2002) (noting that a forum-selection clause in a contract does not control the site for litigation of a tort claim even if the dispute that produced the tort claim would not have arisen absent the existence of the contract). A choice of law provision does not amount to an agreement to litigate in the state whose law is referenced. *Cf. Hope's Windows, Inc. v. McClain*, 394 S.W.3d 478, 482 n.3 (Mo. Ct. App. 2013) (stating that where "the case turns on the enforcement of a forum-selection clause, and the contract includes a choice-of-law provision, the law chosen by the parties controls the interpretation of the forum-selection clause").

infringement of a Missouri citizen's trademark is a tortious act causing injury to the citizen and economic harm in Missouri and is, therefore, within the ambit of the Missouri long-arm statute) (collectively, "the *Cepia* cases"). Here Defendant's infringing actions occurred where the FCS Cart was constructed, but as set forth in these cases, use of the infringing product damaged Plaintiff in Missouri. Therefore Plaintiff's allegations of copyright infringement support the application of the tort prong, but not the contract prong, of the Missouri long arm statute. *Cf. Cepia, L.L.C.*, 2011 WL 5374747, at *7.

This determination does not end the Court's inquiry. Plaintiff also must show that Defendant has sufficient minimum contacts with the State of Missouri to satisfy the requirements of the Due Process Clause.

B. Jurisdiction under the Due Process Clause

Plaintiff alleges five contacts between Defendant and Missouri: the choice of law provision in the lease of the Big Cart mandating the application of Missouri law; the deposit of Defendant's payments under the lease in a Missouri bank account; ongoing duties, such as indemnification, arising under the lease; Defendant's tortious acts of infringement resulting in injury to Plaintiff in Missouri; and images of the FCS Cart on Defendant's web site.

1. Nature and Quality of Contacts

Here, as to "the nature and quality of [Defendant's] contacts with the forum state," the Court rejects the significance of the contacts related to the terminated lease because, as noted above, the claim here is grounded in tort. Defendant's decision to commission

14

an allegedly infringing cart after the termination of the lease, and not its actions under the lease, form the basis for Plaintiff's copyright infringement claim.[5]

In addition, the other contacts, the accessibility of Defendant's web site in Missouri and the possibility that Missouri residents may view photographs of the FCS cart on the web site, are not the type of contacts necessary to satisfy the Due Process Clause. *See Arden*, 614 F.3d at 796–97; *see also Pangaea, Inc.*, 647 F.3d at 747; *Foreign Candy Co., Inc. v. Tropical Paradise, Inc.*, No. C 13–4005–MWB, 2013 WL 3155960, at *12 (N.D. Iowa Jun. 24, 2013) (holding that website allowing forum residents access but only the opportunity to leave their contact information is not the type of contact necessary to support due process).

Here the record does not indicate that visitors to the web site can use it to purchase anything from Defendant or that the site allows for an exchange of information with the host computer. *Zippo*, 952 F.Supp.2d at 1124. Nor is there any indication that the site is interactive or that it has particular features or content directed specifically at Missouri residents. *Id*. The site is accessible to Missouri residents, but only because Defendant has directed its advertisement of the accused product nationwide, including into Missouri. *Lakin*, 348 F.3d at 710. Thus, Defendant's website falls at the "passive" end of the *Zippo* sliding scale, in terms of the nature and quality of the commercial activity it permits. *Id*.

---

[5] With respect to general jurisdiction, Defendant does not seriously assert and the Court cannot conclude that these isolated and discrete contacts are sufficiently "systematic and continuous" to establish general jurisdiction. *See Arden*, 614 F.3d at 795; *see also Express Scripts, Inc. v. Care Continuum Alliance, Inc.*, No. 10CV2235CDP, 2011 WL 2199967, at*2-3 (E.D. Mo. Jun. 7, 2011).

at 710 (quoting *Zippo*, 952 F.Supp.2d at 1124).  On the basis of the foregoing, the Court concludes that the nature and quality of the contacts Plaintiff alleges do not support this Court's exercise of general personal jurisdiction over Defendant.  *See Pangaea, Inc.*, 647 F.3d at 745-46.

2. The Quantity of Contacts

The second factor in the five-factor test of personal jurisdiction employed in this Circuit is "the quantity of those contacts with the forum state."  *Myers*, 689 F.3d at 911. In this regard no "sales" from the website are alleged or evident from the record before the Court.  Similarly, there are no allegations regarding the number of Missouri residents who have accessed the site.

Relevant precedent suggests that at least one sale of, or contact with, the infringing product in the forum is required to satisfy due process.  *See, e.g., AFTG–TG, L.L.C. v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1366–67 (8th Cir. 2012) (holding that a single sale or a few sales to customers in the forum were not enough to establish personal jurisdiction); *Pangaea*, 647 F.3d at 749 n.5 (noting that a single contact, in certain contexts, is an insufficient basis for personal jurisdiction); *Foreign Candy Co.,* 2013 WL 3155960, at *13 & n.5 (holding that a single sale to the plaintiff by a third-party retailer involving "no negotiation of terms of the sale between a forum resident and the defendant, [was] an insufficient 'quantity' of sales to support personal jurisdiction"). Therefore, viewing the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to meet its "minimal" burden of proof with respect to the quantity of contacts with the forum state.

### 3. The Relationship Between the Contacts and the Cause of Action

The third element in the five-element test of personal jurisdiction, "the relationship of the contacts with the cause of action,. . . distinguishes between specific and general [personal] jurisdiction." *Myers*, 689 F.3d at 911. Application of the *Calder* "effects test" to this inquiry is appropriate where the plaintiff alleges tortious injury. *See Arden*, 614 F.3d at 794.

Accepting Plaintiff's allegations as true, the Court concludes that Plaintiff makes a prima facie showing with respect to the first and third of the *Calder* factors, namely, that the defendant acted intentionally and that the defendant knew the plaintiff would feel the effects in the forum state. Plaintiff alleges that Defendant knew, by virtue of lease, that Plaintiff, a Missouri corporation, claimed to hold a valid copyright in the Big Cart and that Defendant intentionally commissioned the building of the allegedly infringing FCS Cart.[6] Although the first and third factors of the *Calder* test are pertinent, those factors are rarely dispositive. *See Baldwin v. Fischer-Smith*, 315 S.W.3d 389, 394 (Mo. Ct. App. 2010). "[A]bsent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Arden*, 614 F.3d at 797 (citing *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992)).

---

[6]  With respect to the second *Calder* factor, no Eighth Circuit case explicitly holds that for purposes of the *Calder* test, the harm of copyright infringement is felt in the copyright holder's forum state, but the *Cepia* cases and the *American Buddha* cases discussed above seem to support this proposition. The Court need not decide conclusively whether these cases establish that Plaintiff suffered harm in Missouri because Plaintiff failed to allege facts sufficient to support the second factor of the *Calder* effects test. *Viasystems*, 646 F.3d at 594-95.

The Eighth Circuit construes the *Calder* "effects test" narrowly and with respect to the second *Calder* factor holds that the tortious acts must be expressly aimed at the forum. *Id*. (noting that defendant's"[p]osting on the internet from Colorado an allegedly defamatory statement including the name "Missouri" does not create the type of substantial relationship between defendant and the forum required to confer personal jurisdiction). Only a defendant's extraterritorial acts taken for the express purpose of causing harm in the forum state are sufficient to satisfy *Calder*'s "express-aiming requirement." *See id.; see also FURminator, Inc.*, 2011 WL 3847390, at *5. The allegations here do not indicate that Defendant's actions were so targeted.

Defendant's Internet contacts with the forum are insufficient to show effects in Missouri or a relationship between the defendant and the cause of action. *Foreign Candy,* 2013 WL 3155960, at *13. There is nothing in the record to indicate that Defendant targeted its website or display of the FCS Cart toward Missouri. No promotional activities involving the FCS Cart occurred in Missouri, and there is no allegation that Missouri residents accessed the Defendant's website. As such, Plaintiff has failed to plead facts sufficient to support the second requirement under *Calder. See Dakota Indus., Inc*., 946 F.2d at 1391 (noting that a defendant's acts be "performed for the very purpose of having their consequences felt in the forum state"); *Foreign Candy,* 2013 WL 3155960, at *8 (second factor of *Calder* requires more than accessibility to a website in the forum state).

A plaintiff must show that the defendant "uniquely or expressly aimed [its infringement] at Missouri," not merely at the plaintiff. *Arden*, 614 F.3d at 796. Thus,

even viewing the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to meet its "minimal" burden of proof to show that this second *Calder* factor weighs in favor of the exercise of personal jurisdiction and to show that this Court can assert personal jurisdiction over Defendant under the third element of the due process analysis. *Viasystems*, 646 F.3d at 594-95 (holding that a prima facie case of specific personal jurisdiction could not be shown where plaintiff failed to allege facts to support the second *Calder* factor); *Foreign Candy Co.*, 2013 WL 3155960, at *8 (concluding in an infringement action and despite the existence of one sale in the forum that there was no specific personal jurisdiction over internet seller of allegedly infringing product because the contacts were insufficient to show targeted action against the forum); *see also Superior Edge, Inc. v. Maricopa Cnty. Cmty. Coll. Dist.*, 509 F. Supp. 2d 786, 793-95 (D. Minn. 2007) (refusing to exercise personal jurisdiction because an Arizona college's use of a Minnesota company's copyrighted software after the expiration of the licensing agreement was not sufficiently directed at Minnesota to satisfy *Calder* test or support minimum contacts, although a representative of the Arizona college had visited Minnesota).

On the basis of the foregoing the Court concludes that Plaintiff has failed to allege additional contacts that, coupled with Defendant's intentional acts, would support jurisdiction. Defendant's alleged tortious conduct thus fails to support this Court's exercise of specific personal jurisdiction over Defendant.

4. The Interest of the Forum State and the Convenience of the Parties

The last two elements of the Eighth Circuit test for personal jurisdiction are secondary to the first three. Here, the fourth element, the interest of Missouri in providing a forum for its residents, favors Plaintiff because Missouri has a clear interest in providing a forum for resident copyright holders. *See Myers*, 689 F.3d at 913; *K-V Pharm.*, 648 F.3d at 595. However, this interest does not compensate for Defendant's lack of minimum contacts. *See Digi-Tel Holdings, Inc., v. Proteq Telecommunications (PTE), Inc.*, 89 F.3d 519, 525 (8th Cir. 1996). Therefore, although the fourth factor in the Eighth Circuit test favors Plaintiff, it is not dispositive.

The fifth factor, the convenience of the parties, is neutral. A trial in Missouri would be convenient for Plaintiff but inconvenient for Defendant, and Plaintiff cites no other factors such as convenience of witnesses or proximity to evidence that would tip the balance in favor of either party. *See Dairy Farmers*, 702 F.3d at 479; *K-V Pharm.*, 648 F.3d at 595; *Anheuser-Busch, Inc. v. All Sports Arena Amusement, Inc.*, 244 F. Supp. 2d 1015, 1021 (E.D. Mo. 2002).

## V. <u>CONCLUSION</u>

In light of the foregoing, the Court finds that Plaintiff has failed to allege minimum contacts sufficient to permit this Court to exercise personal jurisdiction over Defendant in accordance with the requirements of the Due Process Clause. Specifically, Plaintiff failed to make a prima facie showing that Defendant's promotional use of Plaintiff's copyrighted design for the vehicle was sufficiently directed at Missouri to satisfy the *Calder* test and give rise to specific jurisdiction over Defendant. Therefore, Plaintiff's claim is dismissed without prejudice for lack of personal jurisdiction

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Lack of

Jurisdiction is **GRANTED**.  (Doc. No. 8.)

**IT IS FURTHER ORDERED** that Plaintiff's complaint is **DISMISSED without**

**prejudice** for lack of personal jurisdiction.


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of September, 2013.